IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SARAH D. SHIELD,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>        Defendant. | CASE NO. 4:17-cv-00307-CVE-GBC<br><br><br><br>(MAGISTRATE JUDGE COHN)<br><br>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Sarah D. Shield ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

**I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.     Procedural History**

In June 2014, Plaintiff filed an application for Supplemental Security Income ("SSI") payments under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3), alleging disability beginning September 2, 2013, due to depression and bipolar disorder. (Tr. 174-83, 211). After an administrative hearing in January 2016 (Tr. 38-82), an ALJ denied Plaintiff's claim. (Tr. 19-37). Plaintiff was 33 years old on the date of the ALJ's decision. (Tr. 32-33). She has her GED, only attending school to the tenth grade. (Tr. 54, 212). The Appeals Council denied Plaintiff's request for review on January 13, 2017 (Tr. 1-6, 10-11), making the ALJ's January 2016 decision the final agency decision for purposes of judicial review (Tr. 1-6). See 20 C.F.R. § 422.210(a). This action followed.

### III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges two errors: (1) the ALJ failed to perform a proper determination at step four of the sequential evaluation process; and (2) the ALJ failed at step five of the sequential evaluation process. (Pl. Br. at 3, Doc. 12).

**A.      Residual Functional Capacity ("RFC") and <u>Winfrey</u>**

**1.      Performance of Past Relevant Work**

Plaintiff contends the ALJ failed to follow the <u>Winfrey</u> test and include Plaintiff's moderate difficulties in her activities of daily living, in her social functioning, and with regard to concentration, persistence, or pace; while questioning the vocational expert ("VE") and evaluating the RFC. (Pl. Br. at 4). In the decision, the ALJ reviewed the record prior to proposing the hypothetical to the VE and formulating the RFC:

> The claimant has the following severe impairments: affective disorder and anxiety disorder …
>
> In activities of daily living, the claimant has moderate restriction. The claimant completed a function report on July 14, 2014. The claimant does have problems sleeping and sometimes will stay in bed for days. She is able to take care of her own needs, but most of the time she does not take care of herself. She does need reminders to take her medications and take care of her personal grooming. She indicated that she does not cook, but used to cook large meals. She does not do any household chores. She does not leave the house very often. She gets very anxious leaving the house. She has not driven in a long time. She will go to the store to get a few things and gets out as quickly as possible. She is able to count change, but does not pay bills. Her mother helps her with money issues. She spends her spare time reading and watching TV and movies. The claimant completed another function report on November 17, 2014. Most of the information provided was basically the same as the prior function report. She did say that her mind races at night, making it difficult to sleep. She is able to fix simple things to eat. At this time, she was in her own apartment. She did wash dishes and keep her apartment picked up. She goes places with her mom or sister. She is too anxious to go out alone. She will go to the store about twice per week for about 10 minutes each time. She is not able to handle finances. Dawn McAfee is the claimant's mother and she completed two third party function reports, one in July 2014 and the other in November 2014. She stated that her daughter was unable to perform simple everyday tasks to care for herself. She was unable to cook, clean or even bathe with consistency. She does have problems sleeping. She will stay in her pajamas and

4

dress only when needed. She goes days without bathing or washing her hair. She does have to have reminders to take care of her grooming and to take her medications. She does not cook for herself. She will make simple things such as sandwiches. When she is in her apartment, she will pick up and wash her own dishes. She has to have encouragement to do these things. She has two bad knees, which makes performing any tasks difficult. She does not drive due to her anxiety. She will go shopping once per week. She does not handle any finances. Her mother or a friend handles this. Her daughter spends her time reading, watching TV and movies, and listening to music.

In social functioning, the claimant has moderate difficulties. She says she eats dinner and watches movies with her mom about twice per week. She does not go anywhere on a regular basis. She had problems getting along with family, friends, and neighbors. She tends to get angry with others. She just wants to be left alone. In the function report completed in November 2014, the claimant indicated she did not have any problems getting along with family, friends, and neighbors. She stated she had severe anxiety when around most people. She used to be very social. She is afraid of the door and it often keeps her inside. In her mother's reports, she stated that her daughter does eat dinner and watch TV with her, her husband and her sister, at least weekly. She will go to the doctor appointments and the library. She does need to be reminded to go to her doctor appointments. Someone always has to go with her. In the July 2014 report, Ms. McAfee indicated that the claimant did have problems getting along with others. In the November 2014 report, she stated she did not have problems getting along with others. She used to be very social, but now is non-social and reclusive in her life.

With regard to concentration, persistence, or pace, the claimant has moderate difficulties. She indicated she could not pay attention for very long. In the function report from July 2014, she stated she did not finish what she started. However, in the one from November 2014, she indicated she could finish what she started. She can follow written instructions pretty well, but spoken instructions, she forgets and cannot concentrate. She gets along okay with authority figures. She has never lost a job due to problems getting along with others. She does not handle stress or changes in routine well. She can sometimes finish what she starts if it interests her. She is able to follow written instructions fairly well. She does not follow spoken instructions well. They need to be written. She does okay at getting along with authority figures. She does not handle stress or changes in routine well …

The claimant testified at the hearing as follows:

She has recently married and her last name is now Jones. She stated she was thinking clearly today and could testify. In regards to the alleged onset date of September 2, 2013, she stated she had a nervous breakdown at work and went home. The only work since then was to babysit a two-year-old, three days per week for about six months. She finally stopped due to her mental illness. The claimant states she is five-foot, eight-inches tall and weighs 230 pounds. She got married to

5

> Keith Daniel Jones on July 14, 2015. He receives Social Security benefits of $980 per month, and that is what they live on. She has two children, ages 10 and 12. She lives in an apartment with her husband. Her children do not live with them. Her husband is also disabled due to mental illness. He is able to manage his own money. She does get food stamps. Her mother in law brought her to the hearing. She gets to visit her children every other Thursday. She goes to counseling once per month with Ashley from Counseling and Recovery. She just started this counseling. She likes to read novels … She did obtain her GED, after finishing 10th grade. She has had certified nursing training; and last worked at Forrest Hills as a certified nursing assistant (CNA). She mainly stays inside due to anxiety. According to the claimant, she has been sober for a month and one-half. Previously, she went to rehab and was sober for 18 months. She lost custody when she began drinking again. She does go to the grocery store about three times per month. She continues to have problems sleeping. She cannot fall asleep and if she does, she cannot stay asleep. She does not do well around people. She gets nervous, hopeless, and helpless. She does have mood swings. Sometimes she cannot get out of bed because her depression is so bad. She will sometimes lie in bed for days. Her mother-in-law helps her with phone calls and talking to the doctor. She has power of attorney. She helps her fill out paperwork and takes her where she needs to go …
>
> The alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file. The claimant's statements about her impairments and their impact on her ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms and objective documentation in file.

(Tr. 24-28, 30). Thus, the ALJ reviewed the record, Plaintiff's testimony including her activities of daily living; social functioning; and concentration, persistence, or pace. From the record, the ALJ found Plaintiff had the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations:
>
> She is able to perform simple (one to two step) tasks with routine supervision; able to interact appropriately with coworkers and supervisors for incidental work purposes; should avoid all contact with the public; and is able to adapt to work settings and some changes in the work settings.

(Tr. 27). The ALJ formulated the RFC from consideration of all of the evidence. Plaintiff states the ALJ found moderate difficulties in activities of daily living, social functioning, and with regard to concentration, persistence, or pace. (Pl. Br. at 4) (citing (T 25-26). Plaintiff cites Pryce-Dawes

6

v. Barnhart, stating a VE has testified an individual with a moderate limitation of social functioning and a moderate limitation of concentration, persistence, or pace certainly could have difficulty maintaining a job. Pryce-Dawes v. Barnhart, 166 Fed. Appx. 348, 350-351 (10th Cir. 2006). The ALJ based the RFC on the findings of the state agency physicians:

> Luther Woodcock, M.D. is a consultant with Disability Determination Services (DDS). He assessed the claimant on August 25, 2014. He opined that the claimant's physical impairments were non-severe. I concur with this opinion and give it great weight. Mary Rolison, Ph.D., is a psychological consultant with DDS, and she assessed the claimant on August 21, 2014. She stated that the evidence supported the presence of affective, anxiety, and substance addiction disorders. Dr. Rolison opined that she was able to perform simple tasks with routine supervision; interact appropriately with coworkers and supervisors for incidental work purposes, but should avoid all contact with the public and adapt to work setting and some changes in work settings. Dr. Rolison's opinion is given great weight. Upon reconsideration, Suzanne Roberts, M.D., DDS, assessed the claimant on November 24, 2014. She adopted Dr. Woodcock's opinion and is also given great weight. Burnard Pearce, Ph.D. assessed the claimant's psychological impairments on November 18, 2014. He adopted Dr. Rolison's opinion as well and is given great weight.
>
> In sum, the above RFC assessment is supported by DDS as indicated above.

(Tr. 31) (citing Tr. 83-108). Thus, the ALJ found the medical record did not support Plaintiff's allegations of disabling limitations. The ALJ questioned the VE as to whether Plaintiff could perform her past work as a housekeeper with the hypothetical RFC, as stated above. (Tr. 74-75). The VE testified a hypothetical individual with Plaintiff's RFC could return to her past work. (Tr. 75). The VE also found someone with Plaintiff's RFC could perform alternative jobs as a dishwasher, electronics assembler, and table worker. Id. The ALJ accounted for the moderate difficulties in activities of daily living; social functioning; and concentration, persistence, or pace; as the ALJ limited Plaintiff to simple (one to two step) tasks with routine supervision; to interacting appropriately with coworkers and supervisors for incidental work purposes; and to avoiding all contact with the public. (Tr. 27). The ALJ explained the limitations accounted for Plaintiff's medically-supportable symptoms and the opinions of record. (Tr. 24-31). See SSR 96-8p, 1996

7

WL 374184, at *7 (addressing the requirements for articulating RFC finding). The ALJ's decision fulfilled the requirements of the regulations.

### 2. <u>**Winfrey**</u> **Test**

Plaintiff contends the ALJ erred by failing to conduct the three-part <u>Winfrey</u> test when evaluating whether Plaintiff could perform her past work. (Pl. Br. at 4-5). Plaintiff cites SSR 82-62 and the "three-phase" analysis set forth in <u>Winfrey</u>:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982). The Tenth Circuit summarized as follows:

> Step four of the sequential analysis … is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC … in the second phase, he must determine the physical and mental demands of the claimant's past relevant work … In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and / or physical limitations found in phase one … At each of these phases, the ALJ must make specific findings.

<u>Winfrey v. Chater</u>, 92 F.3d 1017 (10th Cir. 1996). At phase one, the ALJ found Plaintiff's RFC, listed <u>supra</u>. Plaintiff argues the ALJ found she could perform her past work as housekeeper but did not conduct the phase two evaluation regarding the mental and physical demands of the job. (Pl. Br. at 4-5). The ALJ asked the vocational expert "VE" at the hearing a hypothetical question from the RFC set forth above, and the VE testified such an individual could perform her past relevant work as a housekeeper:

8

| | |
|---|---|
| ALJ: | And are you familiar with Social Security's definition of unskilled, semiskilled, skilled, sedentary, light, medium, heavy, and very heavy work? |
| VE: | Yes. |
| ALJ: | Do you understand that if you give an opinion which conflicts with the information in the DOT[2] or is not address[ed] in the DOT that you will advise me of the same? |
| VE: | Yes. |
| … | |
| ALJ: | All right. Based on your file review and the testimony you've heard, are you familiar with the Claimant's vocational background? |
| VE: | Yes. |
| ALJ: | Can you identify for me please and tell me what exhibits you used? |
| VE: | I used Exhibits 3 to 4E. The past work of Claimant has been as a … housekeeper [which] is unskilled. The SVP is 2. Exertional level is light. The DOT code is 323.687-014. That is the past work of Claimant. |
| ALJ: | Okay. I'll give you a hypothetical … I want you to assume someone of the same age, education, and past experiences of the Claimant. Assume that any physical impairments they have are non-severe and that they wouldn't interfere with her ability to perform all ranges, or all exertional levels. They do have some mental limitations in that this person does have the ability to perform simple, one to two step tasks with routine supervision. This person is able to interact appropriately with coworkers and supervisors for |

---

[2] U.S. Department of Labor's Dictionary of Occupational Titles ("DOT").

9

> > incidental work purposes, but should avoid all contact with the public. And this person does have the ability to adapt to a work setting and some changes in the work setting. Could this hypothetical person return to any of the past work of the Claimant?
>
> VE: Yes, Your Honor …
>
> > As a housekeeper.

(Tr. 73-75). The ALJ adopted this testimony in the decision and made the following findings:

> The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's RFC.
>
> According to the VE, the claimant did perform this job within the last 15 years and did work on a full-time basis. She did perform this job long enough to learn it.
>
> In comparing the claimant's RFC with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. The RFC adopted into this decision is for non-exertional work only. The VE testified that the position of a housekeeper is normally performed at the unskilled light exertional level. This would be acceptable within the RFC in this decision.

(Tr. 31). Thus, the ALJ explained his decision and findings with regard to Plaintiff's past relevant work, in accordance with Winfrey. In Doyal, the Tenth Circuit upheld the ALJ's decision, despite the plaintiff's objection on the basis of Winfrey:

> Phase three required the ALJ to reach a conclusion concerning whether [the claimant] could satisfy the demands of her past relevant work, based on his findings in phases one and two. The ALJ concluded that she could:
>
> > The impartial vocational expert offered testimony indicating that given her particular residual functional capacity, the claimant can perform past relevant work. The vocational expert added that there is no variance between the description of these jobs found in the Dictionary of Occupational Titles and the claimant's residual functional capacity (S.S.R.00–4p). Because [the claimant's] past relevant work did not require the performance of work activities precluded by her medically determinable impairments, I conclude that she is able to perform her past relevant work as a housecleaner and sewing machine operator.

> Id.
>
> [The claimant] complains that the ALJ simply relied on the opinion of the vocational expert (VE) as to the demands of her past relevant work, without making the proper findings required by the remaining phases of the analysis. It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the vocational expert, because in such cases, "the remainder of the step four assessment takes place in the VE's head" and "we are left with nothing to review." Winfrey, 92 F.3d at 1025. That is not what occurred here, however. The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this. An "ALJ may rely on information supplied by the VE at step four." Id.
>
> … The ALJ's findings were adequate here to satisfy the step four requirements articulated in Winfrey.

Doyal v. Barnhart, 331 F.3d 758, 760-61 (10th Cir. 2003). Similarly, in this case, the ALJ proposed a hypothetical to the VE containing Plaintiff's RFC, and the VE testified Plaintiff could perform her past work as a housekeeper. (Tr. 31). Moreover, in the decision, following a discussion as to Plaintiff's limitations, the ALJ concluded nothing in the RFC precluded Plaintiff from performing her past work as a housekeeper. Id. The ALJ's findings in this case mirror the ALJ's findings in Doyal, and thus, substantial evidence supports the ALJ's decision Plaintiff could perform her past work as a housekeeper. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (unpublished)[3] (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009)) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). "Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination." Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010).

---

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential but may be cited for their persuasive value."

**B.     Step Five**

    **1.     Dr. van Tuyl**

Plaintiff states, "all impairments of record must be included in the hypothetical to the VE," and "[a]s argued supra … the failure to incorporate the moderate limitations for concentration, persistence, and pace … would not allow for sustained competitive work." (Pl. Br. at 7). As discussed previously, the ALJ reviewed the record and medical opinions prior to evaluating the RFC. Those findings were supported by substantial evidence.

Plaintiff further argues the findings from Dr. van Tuyl support her allegations of problems with concentration, persistence, and pace. (Pl. Br. at 7). The ALJ reviewed the record prior to evaluating the opinion of Dr. van Tuyl:

> The claimant was taken to Tulsa Center for Behavioral Health (TCBH) on April 28, 2014, due to a suicide attempt through overdosing on pills. She wanted to go to sleep and not wake up. She admitted to daily alcohol use for the past six months. Upon admission, the claimant was diagnosed with the following:
>
> - Mood disorder, NOS
> - Alcohol abuse
> - Person with feared complaint, no diagnosis
> - Problems with primary support, social environment, occupational, housing, and economic
> - Global Assessment of Functioning (GAF) of 19 (some danger of hurting self or others)
>
> The claimant was transferred back to the hospital, due to no beds in a State Facility. She returned back to TCBH two days later. The diagnoses were the same with a slight increase in the GAF score to 23. She stated she was compliant with her medications. She was admitted on April 30, 2014, due to continued suicidal ideations. She was treated and stabilized. The claimant was discharged on May 5, 2014, with the following diagnoses:
>
> - Bipolar II disorder
> - Anxiety disorder, NOS
> - Alcohol dependence
> - Problems with support, social, occupational, and financial
> - GAF of 60

The claimant has been seen at Counseling and Recovery Services, by Stacy Ahmed, CNP, with records dating back to June 2012. She was off her medications. She stated they did not all work. She was trying to get into alcohol rehab. She was assessed with alcohol abuse, panic disorder, major depressive disorder, and obesity and chronic pain. The claimant did go into rehab in June 2012. By the beginning of August 2012, she was doing better and maintained her sobriety. By October 2012, she remained sober, but was still having anxiety and mood swings. By January 2013, she was doing well on her medications. She continued to work and was staying sober. The claimant did not return until July 2013. She had been out of her medications for about two months. She had been sober for a year now. In August 2013, she complained of severe anxiety. Charles van Tuyl, M.D., first saw the claimant in August 2013. The claimant was very upset because her son molested her other children. He was placed in treatment. Dr. van Tuyl's diagnosis was bipolar II disorder. The claimant was hospitalized at Laureate for a few days.

In October 2013, the claimant stated she was doing well on her current medication. She appeared calm and happy. The claimant stated she was in a custody battle for her children. In February 2014, the claimant reported stopping her medications to see if she could do without them. She became very depressed and stressed. Dr. van Tuyl strongly advised her to stay on her medications. In May 2014, she admitted she tried to overdose with Klonopin and ended up at TCBH. It was noted in July 2014, the claimant's weight was up to 268 pounds and her blood pressure was 152/101. Her diagnoses were bipolar disorder II and panic disorder.

The claimant was hospitalized at Laureate Psychiatric Hospital on August 26, 2013. She had suicidal ideations with a plan. She denied the use of THC upon admission; however, her drug screen was positive. She was treated and stabilized on medication. She was discharged on September 3, 2013, with the following diagnoses:

- Bipolar disorder, unspecified
- History of alcohol abuse vs. dependence
- Chronic knee pain
- Problems with primary support group and social environment
- GAF of 45

The claimant continued to see Dr. van Tuyl for her psychiatric problems. In September 2014, her moods were adequately stable with no mania or depression. Her anxiety could get bad and judgment and insight were fair, along with her memory. She reported no problems with concentration. In October 2014, it was noted that the claimant was 68 inches tall and weighed 268 pounds with a BMI of 40. Her judgment, insight, memory and concentration were all good. Her mood was calm and depressed, affect was normal and energy level was low. Her current assessment was as follows:

- Bipolar II disorder
- Generalized anxiety disorder

- Panic disorder with agoraphobia

> The claimant continued to be seen at Counseling and Recovery Services through the end of December 2014. The claimant did not return until July 2015. She stated she had been off her medication for 10 days and started to decompensate. She did fine while on her medications. She said she had two panic attacks per month, slept about four to five hours due to insomnia and would wash her hands constantly and counts constantly. She stated she cleans nonstop when she is manic. The claimant stated she has had two suicide attempts. By the end of August 2015, the claimant stated she had some mood swings, brief episodes of depression and mania, and anxiety, panic and sleep were okay. Her ex-husband had custody of the children; however, she still was able to see them. She did smoke cigarettes. She lived alone but her boyfriend was helping her financially. She previously used alcohol, cannabis, and cocaine.
>
> Dr. van Tuyl wrote a letter dated July 2, 2015. He stated the claimant was being treated for bipolar disorder and was not able to work at that time.
>
> Statements that a claimant is "disabled," "unable to work," cannot perform a past job, or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner …
>
> The claimant stated she went into rehab for her alcohol abuse in June 2012. There are no records to support a rehab stay at that time. She indicated her onset date of September 2, 2013, was when she had a breakdown and left work. The records show that she was hospitalized on August 26, 2013, and discharged on September 3, 2013, for suicidal ideation; and again, in April 2014. She admitted in April 2014, that she had been drinking daily for the past six months. There were discrepancies between statements from the claimant and the actual evidence in regards to her sobriety. At the hearing, she stated she was sober for a month and one-half. Throughout the record, it is evident that the claimant has not been totally compliant with treatment and her medications. There were several instances when she admitted to stopping her medications. There were breaks in the service from Counseling and Recovery. In addition, the claimant stated she started drinking after losing her job in September 2013. She was drinking in 2012 and went to rehab in June 2012. Therefore, the claimant's credibility is significantly reduced.
>
> As for opinion evidence, Dr. van Tuyl is the claimant's treating psychiatrist. His letter dated July 2, 2015, indicated the claimant was "not able to work at this time." It is a broad statement and is not supported by his treating records. Therefore, Dr. van Tuyl's opinion is given little weight.

(Tr. 28-31). Plaintiff argues Dr. van Tuyl's notes support Plaintiff's problems with concentration, persistence and pace, even if the [RFC] limits Plaintiff to simple once to two step tasks. (See Pl.

14

Br. at 7). Plaintiff states: "Notes from Dr. van Tuyl corroborate that Claimant would have a problem with concentration, persistence and pace … Claimant still had very bad anxiety in spite of the numerous medications Claimant has taken, and she reported very bad anxiety and panic attacks, even when her moods were adequately stable." (Pl. Br. at 7) (citing Tr. 429). Despite Plaintiff's allegations, on September 22, 2014, Dr. van Tuyl noted, "Reports no problem concentrating." (Tr. 429). On July 2, 2015, Dr. van Tuyl submitted the following opinion:

> Dear Sir or Madam,
>
> Sarah is being treated at this facility for Bipolar Disorder. She is not able to work at this time. Thank you for your help and assistance.
>
> Sincerely,
>
> Charles D. van Tuyl, M.D.
> Prescribing Physician

(Tr. 448). As the ALJ found, the opinion Plaintiff "is not able to work at this time," is an opinion reserved to the Commissioner. The Tenth Circuit has upheld this conclusion:

> it was not reversible error for the ALJ to discount [a physician's opinion that the plaintiff] was unable to work full-time and unable to work at a customer service position. Not only were those findings not supported by acceptable clinical and laboratory findings, but also they infringed upon issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(e) ("Opinions on some issues ... are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case[.]"); id. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir.1994).

Korum v. Astrue, 352 F. App'x 250, 253 (10th Cir. 2009). Similarly, in this case, Dr. van Tuyl did not make any supporting findings or work restrictions to support Plaintiff's allegations of disability. Thus, the ALJ could reject Dr. van Tuyl's opinion and rely on the findings of the State agency physicians. (Tr. 31). Moreover, the ALJ adopted the findings of the State agency physicians by limiting Plaintiff to performing simple (one to two step) tasks with routine supervision; to

15

interacting appropriately with coworkers and supervisors for incidental work purposes; and to avoiding all contact with the public. (Tr. 27).

### 2. Performance of Other Work

Plaintiff also contends the ALJ erred at Step Five of the sequential evaluation process by finding Plaintiff could perform the jobs identified by the VE due to reasoning level and Plaintiff's RFC limiting her to simple one to two tasks with routine supervision. (Pl. Br. at 5-6).

Plaintiff's argument the ALJ erred in relying on the vocational expert's testimony is not based on the regulations or the DOT, but instead implicates the Tenth Circuit's decision in Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005). In Hackett, the Tenth Circuit found a limitation to "simple and routine work tasks" seemed inconsistent with the demands of level three reasoning. (Id. at 1176). The Tenth Circuit remanded the case so the ALJ could address the "apparent conflict." Id. Thus, in Hackett, the Tenth Circuit did not discuss the claimant's educational level. Id. Although the Tenth Circuit perceived an "apparent conflict" between the claimant's GED levels and the ALJ's RFC finding, the court did not consider whether the "conflict" might be explained since GED describes general educational background, rather than the specific mental or skill requirements of a particular job. Id. Moreover, each of the jobs in this case, identified by the VE, contain reasoning level "1" or "2," as opposed to Hackett, which remanded for a job with reasoning level "3." See Hackett, 395 F.3d 1176; see also Dishwasher (Kitchen Helper), DOT 318.687-010, 1991 WL 672755; Electronic Assembler, DOT 729.687-010, 1991 WL 679733; and Table Worker, DOT 739.687-182, 1991 WL 680217.

Plaintiff is correct in that the Dishwasher and Electronic Assembler positions have a reasoning level of two. (Pl. Br. at 6). However, DOT classifies Table Worker as an unskilled job

16

with a GED reasoning level of one. See DOT 739.687-182. As such, the job only requires simple one or two step instructions, which is within Plaintiff's RFC.

Thus, any arguable deficiency would be harmless, and would not have changed the outcome. See Raymond, 621 F.3d at 1274 (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy). See also Vititoe, 549 F. App'x at 729-30 (citing Sanders, 556 U.S. at 409-10). "Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination." Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010).

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

**RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

**OBJECTION**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than October 1, 2018.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on September 17, 2018.

_____
Gerald B. Cohn
United States Magistrate Judge