UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SARAH D. SHIELD, )
)
    Plaintiff, )
)
v. ) Case No. 17-CV-0307-CVE-GBC
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social )
Security Administration, )
)
    Defendant. )

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 19) of the magistrate judge recommending that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 20) to the report and recommendation, and she asks the Court to remand the case for further administrative proceedings. Defendant has filed a response (Dkt. # 21) to plaintiff's objection, and the report and recommendation is ripe for review.

**I.**

Sarah D. Shield filed a claim with the Social Security Administration seeking disability benefits, and she alleged that her primary disabilities were mood and anxiety disorders. Dkt. # 10-3, at 2. Shield's claim was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ). Dkt. # 10-4, at 14.

On January 19, 2016, Shield appeared at a hearing before an ALJ and she was represented by counsel. Dkt. # 10-2, at 39. Shield's attorney offered a letter from Charles van Tuyl, M.D., stating that Shield was unable to work as of July 2, 2015, and the ALJ accepted the letter as an

exhibit, even though it did not identify any specific impairments.[1] Id. at 45. Shield's attorney stated that Shield suffered from bipolar disorder, a mood disorder, alcohol dependence, major depressive disorder, panic disorder, agoraphobia, and left knee pain. Id. The ALJ questioned whether Shield was competent to testify with all of the alleged mental illnesses identified by her attorney, and Shield's attorney believed that Shield was competent. Id. at 46. Shield was 33 years old on the date of the hearing, and she alleged that she had been disabled since September 2, 2013. Id. at 46-47. Shield had provided babysitting services for one child for about six months since that date, but she often would not get out of bed and eventually stopped babysitting. Id. at 48. Shield was five feet eight inches tall and weighed approximately 230 pounds, and she re-married in July 2015. Id. at 48-49. Shield had two children from a previous marriage, but she did not live with her children. Id. at 50. Shield and her husband live on her husband's disability benefits, and she also receives food stamps. Id. at 51-52. Shield has a driver's license, and she leaves the house to visit her children and go to counseling. Id. at 53-54. She did not finish high school but she has obtained her GED. Id. at 55. Shield has received vocational training to work as a certified nursing assistant (CNA), and she has used these skills in the workforce. Id. at 55-56, 58. In terms of daily life, Shield testified that she has a difficult time being around other people due to anxiety, and she sometimes stays indoors for several weeks at a time. Id. at 61. Shield has a history of regular alcohol use, but she has had periods of sobriety. Id. at 62. Upon questioning by her attorney, Shield testified that she has attempted suicide and she was hospitalized following her suicide attempt. Id. at 64. She claims that she suffers from depression that is so severe that does not get out of bed for days. Id. at 66.

---

[1] Shield subsequently explained that Dr. van Tuyl's letter was prepared in connection with her application for food stamps, and the letter was originally sent to the Oklahoma Department of Human Services, rather than the Social Security Administration. Id. at 77.

2

Shield suffers from pain in her left knee, and she claims that it is painful for her to walk, bend, or use stairs. Id. at 69. The ALJ resumed questioning Shield and inquired about her consumption of alcohol, and Shield stated that she had been consuming about a pint of gin per day over a two year period after she stopped working. Id. at 71. The ALJ called a vocational expert (VE) to testify, and the VE explained that Shield had past relevant work as a CNA, cashier, and housekeeper. Id. at 75. The ALJ asked the VE to consider a hypothetical claimant with non-severe physical limitations that would not limit work at any exertional level and some mental limitations that would restrict the hypothetical claimant to performing simple tasks with routine supervision. Id. at 75. The hypothetical claimant could interact with co-workers and supervisors but should avoid contact with the public. Id. The VE testified that the hypothetical claimant could work as a housekeeper. Id. at 76. In addition to the job of housekeeper, the VE identified the jobs of dishwasher, electronics assembler, and table worker as jobs in the national economy that could be performed by the hypothetical claimant. Id. at 77. However, Shield explained that she had "bad days" on which she could not work approximately four times per week, and the VE testified that this would preclude all employment if accepted as true. Id. at 80.

The ALJ entered a written decision denying Shield's claim for disability benefits. Id. at 23-34. Shield had not engaged in substantial gainful employment since June 19, 2014, and she had the severe impairments of affective disorder and anxiety disorder. Id. at 25. Shield alleged that she had the impairments of obesity and arthritis of both knees, but the ALJ found that these impairments were non-severe due to a lack of objective medical evidence showing any limitations from these conditions. Id. at 26. The ALJ considered Shield's testimony and two third party function reports submitted by her mother, and found that Shield had moderate restrictions as to daily living. Id.

Shield also has moderate difficulties in regard to concentration, persistence, and pace, and the ALJ described the conflicting evidence concerning Shield's ability to follow instructions, finish tasks, and work with others. Id. at 27. The ALJ considered whether Shield had a disorder of more than two years in length that caused more than a minimal limitation of her ability to perform any type of work activity outside of the home, and the ALJ determined that Shield could function outside of the home. Id. at 27-28. The ALJ found that Shield had the residual functional capacity (RFC) to perform a full range of work at all levels, but imposed the following nonexertional limitations:

> She is able to perform simple (one to two step) tasks with routine supervision; able to interact appropriately with co-workers and supervisors for incidental work purposes; should avoid all contact with the public; and is able to adapt to work settings and some changes in the work setting.

Id. at 28. The ALJ summarized Shield's testimony and found that many of the physical and mental limitations she described were not supported by the objective medical and non-medical evidence. The ALJ discussed Dr. van Tuyl's letter of July 2, 2015 in which Dr. van Tuyl opines that Shield is unable to work, and the ALJ explains that a physician's opinion on the ultimate issue of disability is not entitled to controlling weight. Id. at 31. However, the ALJ did not wholly disregard the letter, and the ALJ acknowledged that Dr. van Tuyl's opinions must be considered to the extent they are supported by evidence. Id. The ALJ reviewed Dr. van Tuyl's treatment records and noted that he had diagnosed Shield with bipolar disorder and panic disorder. Id. at 30. The ALJ determined that Shield's RFC did not preclude her from performing her past relevant work as a housekeeper, and the ALJ also made alternate step five findings that Shield could work as a dishwasher, electronic assembler, and table worker. Id. at 32-33.

4

Shield sought review of the ALJ's adverse decision by the Appeals Council, but the Appeals Council found no basis under its rules to review the decision. Id. at 2-4. Shield filed this case seeking judicial review of the denial of her claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge has recommended that the Commissioner's decision be affirmed.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

Plaintiff objects to the magistrate judge's report and recommendation that the Commissioner's decision to deny her claim for disability benefits should be affirmed. She argues that the ALJ failed to make the necessary findings at step four of the analysis, and the case should be remanded to allow the ALJ to make additional step four findings. Dkt. # 20, at 3. She also argues that her RFC precludes her from performing any of the jobs identified in the ALJ's alternative step five findings. Id. at 4-6.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. See id. Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. See id.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step four of the analysis but he also made alternative step five findings. Step four has three separate phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], see SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 427 (West 1992), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). If a claimant can perform his or her past relevant work, the claimant is not disabled and the ALJ is not required to continue to step five of the analysis. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC.

Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). Defendant bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## A.

Plaintiff argues that the ALJ's findings at step four were insufficient under Winfrey, because the ALJ failed to make sufficient findings that plaintiff could perform the mental requirements of the job of housekeeper. Dkt. # 20, at 4. Plaintiff claims that the ALJ could not rely on the VE's testimony to meet this requirement, because the ALJ did not specifically discuss the mental requirements of the job of housekeeper with the VE. Id. In Winfrey, the Tenth Circuit stated that "while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." Winfrey, 92 F.3d at 1024. In a subsequent decision, the Tenth Circuit

clarified that an ALJ may quote the VE's findings with approval in support of his findings at step four concerning the demands of the claimant's past relevant work and the claimant's ability to perform that work. Doyal v. Barnhart, 331 F.3d 758 (10th Cir. 2003). However, the Tenth Circuit explained that it is "improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the [VE]," because a reviewing court is left with a record where the majority of the step four analysis "[took] place in the VE's head . . . ." Id.

Plaintiff claims that the ALJ's findings as to the mental demands of the job of housekeeper are inadequate, and the case should be remanded for further administrative proceedings. Plaintiff is correct that the ALJ did not engage in an extended discussion with the VE about the mental demands of performing the job of housekeeper. However, that does not automatically mean that the ALJ's findings at step four are inadequate, because the ALJ's written decision contains extensive findings concerning plaintiff's mental limitations. These mental limitations do not prevent her from performing the job of housekeeper based on the description contained in the Dictionary of Occupational Titles (DOT). The job of housekeeper is listed at section 323.687-014 of the DOT, and the job requires level 1 reasoning. Specifically, this requires "commonsense understanding to carry out simple one or two step instructions." Plaintiff's RFC states that she is able to "perform simple (one to two step) tasks with routine supervision . . . ." Dkt. # 10-2, at 28. Plaintiff has made no attempt to show that the mental limitations contained in her RFC would prevent her from working as a housekeeper, and she merely objects that the ALJ failed to make an express finding comparing her mental limitations to the DOT's description of the job. The ALJ did make a specific finding that plaintiff had previously worked as a housekeeper and that she "perform[ed] this job long enough to learn it." This finding goes to plaintiff's ability to perform the mental aspects of the job of

housekeeper. The Court finds that the ALJ made sufficient findings concerning plaintiff's mental limitations and her ability to work as a housekeeper, and plaintiff's argument concerning the lack of an extended discussion on this issue between the ALJ and the VE does not show that the case should be remanded for the ALJ to make additional findings at step four.

**B.**

Plaintiff's remaining arguments concern the ALJ's step five findings that she could perform certain jobs available in the national economy. However, the ALJ determined that plaintiff was capable of performing her past relevant work as a housekeeper, and this means that plaintiff was found not to be disabled at step four of the analysis. See Lax, 489 F.3d at 1084. Although the Court's finding concerning plaintiff's challenge to step four is dispositive, the Court has reviewed plaintiff's arguments concerning step five and she raises one argument that could be construed as a challenge to the RFC and the ALJ's treatment of medical evidence. The Court will consider this objection concerning the ALJ's step five findings to ensure that there was no error in the formulation of the RFC that could have impacted the ALJ's step four finding that plaintiff could perform her past relevant work as a housekeeper.

Plaintiff argues that the ALJ erred by rejecting Dr. van Tuyl's opinion that plaintiff was unable to work, and she claims that this opinion was supported by Dr. van Tuyl's treatment records. Dkt. # 20, at 6. Plaintiff states that Dr. van Tuyl found that plaintiff was suffering from hallucinations during an August 2014 visit. Id. Plaintiff also claims that the magistrate judge ignored medical records from an October 24, 2014 visit to Dr. van Tuyl for treatment for manic episodes, hallucinations, and anxiety attacks. Id. There are two problems with plaintiff's argument. First, plaintiff is focused on the magistrate judge's recitation of the record, but the Court is

9

reviewing plaintiff's objections under a de novo standard. The relevant consideration is whether the ALJ, not the magistrate judge, discussed the relevant medical evidence, because the Court is independently considering plaintiff's objections and is not giving any deference to the magistrate judge's recommendations. In this case, the ALJ provided a summary of the two visits to Dr. van Tuyl referenced by plaintiff, and the ALJ accurately summarized the medical evidence in his written decision. Second, plaintiff's summary of the medical records is misleading and does not accurately reflect Dr. van Tuyl's objective findings. Plaintiff focuses on her subjective complaints of manic episodes and hallucinations, and Dr. van Tuyl's records do note plaintiff's subjective complaints. However, on August 27, 2017, he objectively found that plaintiff was not having hallucinations and she was not engaging in obsessive behavior. Dkt. # 10-7, at 157. On October 24, 2014, plaintiff reported that she was having auditory hallucinations, but Dr. van Tuyl found that plaintiff had no violent or obsessive thoughts and her thought processes were normal and logical. Id. at 149. The ALJ correctly summarized Dr. van Tuyl's objective findings and, in any event, the ALJ correctly stated that Dr. van Tuyl's opinion on the ultimate issue of disability was not entitled to controlling weight. See Castellano v. Sec. of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The Court finds no error concerning the ALJ's treatment of the opinion letter and underlying medical records of Dr. van Tuyl, and plaintiff has not shown that the ALJ failed to properly evaluate the medical evidence when formulating plaintiff's RFC.[2]

---

[2] Based on the Court's findings, the ALJ properly determined that plaintiff was not disabled at step four, and it is unnecessary to consider her argument that she could not perform the jobs identified by the ALJ at step five.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 19) is **accepted**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 6th day of November, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE